UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JUAN HOUSE,                                  :
       Plaintiff,                             :
                                             :
v.                                           :    No. 2:18-cv-04283
                                             :
DEVON SMITH,                                 :
       Defendant.                             :
_____

**O P I N I O N**
**Plaintiff's Motions for Default Judgment, ECF Nos. 40, 44 – Conditionally Granted in Part**

**Joseph F. Leeson, Jr.**                                        **July 28, 2021**
**United States District Judge**

## I.   INTRODUCTION

This case arose following the 2016 arrest of Plaintiff Juan House by Defendant Devon Smith, an officer with the Sharon Hill Police Department. Smith is the sole remaining defendant and default was entered against him for failing to respond to the Complaint. House has moved for default judgment against Smith. For the reasons set forth herein, the motions are conditionally granted in part. The motions are conditionally granted in favor of House and against Smith, in his individual capacity only, as to House's Fourth Amendment illegal search claim and his claim for malicious prosecution as to the charges of retail theft and receiving stolen property, only. The Court will schedule a hearing to determine the amount of any damages, at which time prejudice will be reconsidered before default judgment is entered.

## II.   BACKGROUND

According to the Complaint, the factual allegations in which are accepted as true for purposes of this Opinion, on or about October 14, 2016, House was walking in the area of the

Family Dollar Store in Sharon Hill, Pennsylvania. *See* Compl. ¶ 8, ECF No. 1.  Two Sharon Hill Borough Police officers stopped House for an alleged harassment in progress. *See id.*  When House inquired as to the reason for the stop, Smith's partner told House that he fit the description of the alleged harasser.[1]  *See id.*  The aunt of the fourteen-year-old harassment victim was brought to the location of the stop to identify House as the harasser.  *See id.* ¶ 10.

Smith, who was the first officer to arrive, "made" House sit down while he ran House's name. *Id.* ¶ 9.  Smith took House's backpack and set it down approximately five feet away from House. *See id.*  While House was sitting down waiting for his name to clear, Smith picked up the backpack and asked House what was inside. *Id.* ¶ 11.  House responded that it was his "personal property." *See id.*  Without permission, Smith searched through the backpack. *Id.* ¶ 12.  Smith asked House where he got the contents, to which House replied that it was his "personal property." *See id.*  Smith pulled out a Family Dollar[2] bag with a price tag from House's backpack and asked House: "If I take this up to the family dollar up the street [are they] gonna say it didn't come from their store, do you have a receipt for this"" *Id.* ¶ 14.  House again informed Smith that it was his property. *See id.*  During this time, House's name was cleared for any warrants and Smith's partner asked Smith if they were going to give House a citation and let him go. *Id.* ¶ 13.

---

[1] According to the Complaint, Smith testified at the preliminary hearing that he had received a police dispatch that a black male allegedly followed a fourteen-year-old girl into Checkers, which was located near the Family Dollar Store, and started yelling at her.  *See* Compl. ¶ 18.  The Complaint alleges that the "affidavit expressed the same scenario, but the alleged Harassment victim stated that the Plaintiff was 'mumbling something' and continued walking past [her]." *Id.*  House contends that Smith's testimony and affidavit were lies.  *See id.*
[2] When police stopped House, he was approximately one hundred yards away, across the street from the Family Dollar store.  *See* Compl. ¶ 8.

Instead, Smith put House in the police car and drove to the Family Dollar. *Id.* ¶ 14. Smith went inside the Family Dollar for approximately twenty minutes. *Id.* ¶ 15a.³ When Smith returned he told House: "It looks like you were in the store and stole stuff that was in your backpack." *Id.* Smith subsequently testified at a preliminary hearing that when he went to the Family Dollar, an employee showed him video footage of House putting items into his backpack. *Id.* ¶ 21. Smith testified the video was in police custody and would be available for trial, which House asserts was a "clear lie" because no video was preserved. *Id.* Because no video was preserved, House claims that Smith never saw him take anything and no footage was shown to the Family Dollar employee. *Id.* ¶ 23. House further states he "did not steal anything." *Id.* ¶ 19.

From the Family Dollar, House was taken into custody and transported to the Police Department. *Id.* ¶ 16a. Police officers told House that he was being arrested for retail theft, harassment, and disorderly conduct.⁴ House became emotionally distraught due to his arrest and attempted to commit suicide by hanging himself in the jail cell. *Id.* ¶ 18. House was taken to the hospital and committed to the psyche ward for approximately seven days before being released by mistake. *Id.* ¶ 16. Approximately thirty days later, House was arrested on a warrant for the charges. *See id.*

Following the preliminary hearing, House filed a number of motions, including a motion to quash the criminal charges and a motion to suppress evidence. *Id.* ¶ 26. The motion to quash

---

³ Paragraph numbers 15, 16, 17, and 18 are repeated in the Complaint. The first such paragraphs are denoted as paragraphs 15a, 16a, 17a, and 18a for purposes of this Opinion.
⁴ The harassment and disorderly conduct charge, which arose because House allegedly yelled profanities to the police officers while in a jail cell, *see* Compl. ¶ 17a, were summary offenses, while the retail theft was a felony. House was also charged with a misdemeanor of receiving stolen property. *See Commonwealth v. House*, CP-23-CR-0001317-2017 (Del. Co. Ct. Com. Pls. Oct. 5, 2016).

was denied, but the motion to suppress was granted. *See id.* Approximately nine months later, the charges were dismissed for failure to prosecute. *See id.*

On October 3, 2018, House initiated the above-captioned case against Smith, the Family Dollar, a Family Dollar employee, and two prosecuting attorneys,[5] alleging, *inter alia*, false arrest, false imprisonment, malicious prosecution, and a violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. *See id.* On December 20, 2018, House's claims against the Family Dollar, the Family Dollar employee, and the two prosecuting were dismissed with prejudice as legally baseless. *See* Order, ECF No. 10. A summons was subsequently issued as to Smith and transmitted to the United States Marshals Service for service. *See* Order, ECF No. 20. Service on Smith was accepted on November 27, 2019, by the Borough Manager at the Sharon Hill Police Department, but Smith failed to timely file a responsive pleading. *See* ECF No. 21. On February 4, 2020, default was entered against Smith. *See* Order, ECF No. 25. House subsequently filed a motion for default judgment, *see* ECF No. 27, which was dismissed without prejudice because House failed to file an affidavit sufficient to meet the requirements of the Servicemembers Civil Relief Act, *see* Opn., ECF No. 34.

House has renewed his request for default judgment against Smith. *See* Mot., ECF Nos. 40, 44.[6] In an affidavit attached to the Motion, House states that his prison counselor called the Sharon Hill Police Department to inquire whether Smith was in the military. *See* Aff., ECF No. 40, 44. The phone operator confirmed that Smith worked for the Sharon Hill Police Department, but could not state whether or not Smith was in the military without a court order. *See id.* House

---

[5] The Family Dollar employee and the two prosecuting attorneys were identified as Jane Does #1-3.
[6] A few weeks after the first Motion for Default Judgment was filed, House filed a nearly identical Motion for Default Judgment and supporting Affidavit. They are considered together.

attests that because he is incarcerated he has no other way to determine whether Smith is in the military. *See id.* Several months have passed, but Smith has never contacted the Court to respond to the Complaint or motions or to seek an extension of time in which to do so.

### III. LEGAL STANDARDS

#### A. Motion for Default Judgment – Review of Applicable Law

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when a default has been entered by the Clerk of Court. *See* Fed. R. Civ. P. 55(b)(2). Entry of default judgment is a matter within the sound discretion of the district court. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Prior to entering default judgment, the court must determine: (1) that it has personal jurisdiction over the defaulting defendant; (2) that proper service of process was made upon the defaulting defendant; (3) that the complaint contains facts necessary to state a cause of action; and (4) damages. *See D'Onofrio v. Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006). "Where a court enters a default judgment, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DirecTV Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (internal quotations omitted).

Next, because default judgments are disfavored the court must weigh the *Chamberlain* factors. In *Chamberlain*, the Court held that "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).[7] "Prejudice

---

[7] *See Young v. City of Chester*, 764 F. App'x 262, 266 (3d Cir. 2019) (concluding that although *Chamberlain* "concerned the standard for granting the entry of default judgment rather

exists if circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant evidence has become lost or unavailable." *Accu-Weather, Inc. v. Reuters, Ltd.*, 779 F. Supp. 801, 802 (M.D. Pa. 1991). A "meritorious defense is presumptively established when the 'allegations of defendant's answer, if established on trial would constitute a complete defense to the action.'" *Hritz*, 732 F.2d at 1181; *Accu-Weather, Inc.*, 779 F. Supp. at 802 ("A meritorious defense is one which, if proven at trial, will bar plaintiff's recovery."). "The third issue is culpable conduct. The standard is the willfulness or bad faith of the defendant." *Craftmatic/Contour Org., Inc. v. Bedmatic Mfg.*, 1985 U.S. Dist. LEXIS 15307, *6 (E.D. Pa. 1985). Culpable conduct is evidenced by "flagrant bad faith." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 75 (3d Cir. 1987).

Additionally, under the Servicemembers Civil Relief Act, the plaintiff, to obtain a default judgment, must "file with the court an affidavit- (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service." *See* 50 U.S.C. § 3931(b)(1). If, "based upon the affidavits filed in such an action, the court is unable to determine whether the defendant is in military service, the court, before entering judgment, may require the plaintiff to file a bond in an amount approved by the court." The bond is to be available to "indemnify the defendant against any loss or damage the defendant may suffer by reason of any judgment for the plaintiff against the defendant, should the judgment be set aside in whole or in part" if the defendant is later found to be in military service. *See* 50 U.S.C. § 3931(b)(3).

---

than vacating the entry of default, the test is the same" (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)).

B.     **Fourth Amendment – Review of Applicable Law**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 528 (1967). "The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a 'search' within the original meaning of the Fourth Amendment has 'undoubtedly occurred.'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406-07, n.3 (2012)). To assess the reasonableness of a search, it is necessary to consider "the governmental interest which allegedly justifies official intrusion" and, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

C.     **False Arrest – Review of Applicable Law**

"Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000). "In Pennsylvania, a 'false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so.'" *Id.* (quoting *McGriff v. Vidovich*, 699 A.2d 797, 799 (Pa. Commw. 1997)). Probable cause "is only needed with respect to any offense that could be charged under the circumstances;"

therefore, "establishing probable cause on one of multiple charges will defeat a claim of false arrest." *Gray v. Wittman*, 839 F. App'x 669, 670-71 (3d Cir. 2021) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)); *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).  "Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal citations omitted).

        D.       **False Imprisonment – Review of Applicable Law**

"A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Renk*, 641 A.2d at 293.  "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636.

        E.       **Malicious Prosecution – Review of Applicable Law**

To state a claim for malicious prosecution, the plaintiff "must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993)).  Pursuant to the first element, "only a person who initiates criminal proceedings may be liable for

8
072621

malicious prosecution." *Taylor v. City of Phila.*, No. 96-740, 1998 U.S. Dist. LEXIS 4295, at *25-26 (E.D. Pa. Apr. 1, 1998). A police officer may be liable only if: (1) he conceals exculpatory evidence from the prosecutor who makes the charging decision; (2) provides false or misleading reports to the prosecutor; or (3) otherwise interferes with the prosecutor's ability to exercise independent judgment regarding the guilt or innocence of the accused. *See id.* The purpose of the second element, referred to as the favorable termination rule, "is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). As to the third element, probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

## IV.  ANALYSIS

Accepting the allegations of the Complaint as true, except those relating to damages, this Court finds that it has personal jurisdiction over Smith, that proper service of process was made upon him, and that the Complaint contains facts necessary to state a cause of action as to some, but not all claims. Additionally, House has satisfied the requirements of the Servicemembers Civil Relief Act by providing an affidavit, supported by facts, stating he is unable to determine whether or not Smith is in military service. *See* 50 U.S.C. § 3931(b)(1)(B).[8]

---

[8]  In accordance with the protections envisioned by the Act, if this Court awards any damages pursuant to a default judgment against Smith, it will require House to post a bond before any monetary judgment is entered. *See* 50 U.S.C. § 3931(b)(3).

### A.  House has alleged a violation of his Fourth Amendment rights.

As to the Fourth Amendment claim, the allegations establish that House did not consent to the search of his backpack and that Smith's search thereof was unreasonable. Specifically, House was sitting down at the direction of the officers and waiting for his name to clear. He did not pose a danger to the officers, nor was there any reason to suspect that he had a weapon in his backpack. *Accord Terry*, 392 U.S. at 30 (holding that when a police officer conducts an investigatory detention and he reasonably believes that the person may be armed and dangerous, the officer is "entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him"). Further, the bag was approximately five feet away from House where Smith initially put it. When Smith inquired as to its contents, House clearly refused to give Smith consent to search inside. Consequently, House has stated a cause of action that Smith's warrantless search was unreasonable and violated House's Fourth Amendment rights.[9]

### B.  House has failed to state a cause of action for false arrest because there was probable cause to arrest him on at least one charged offense.

---

[9]   House's claim that the illegal search, malicious prosecution, and allegedly false arrest also violated his Fifth, Eighth, and Fourteenth Amendment rights, *see* Compl. ¶ 34, fails as a matter of law. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding that "the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions" and affirming dismissal of the Fourteenth Amendment claim for malicious prosecution); *Bell v. Wolfish*, 441 U.S. 520, 599 (1979) (holding that a pretrial detainee is not protected by the Eighth Amendment's proscription against cruel and unusual punishment); *B&G Constr. Co. v. Dir., OWCP*, 662 F.3d 233, 264 (3d Cir. 2011) (holding that the Fifth Amendment applies only to actions of the federal government); *Tingey v. Gardner*, No. 17-827, 2019 U.S. Dist. LEXIS 215209, at *11 (E.D. Pa. Dec. 13, 2019) (finding that the Fourth Amendment provides the explicit source of constitutional protection for the plaintiff's false arrest claims and dismissing the claim under the Fourteenth Amendment). Leave to amend these claims would be futile so they are dismissed with prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

Police responded to the area upon receipt of the report of a black male following a fourteen-year-old girl into Checkers and yelling at her. Once arriving in the area, Smith and his partner encountered House, who fit the description of the alleged harasser. The aunt of the harassment victim was brought to identify House. These facts were sufficient for Smith to believe House had committed the crime of harassment.[10] The fact that this offense was a summary is of no import.[11] Although House complains that the aunt, instead of the minor victim, was brought to the location of his stop to identify him, the aunt's identification was sufficient to provide probable cause. *See Petaccio v. Davis*, No. 02-2098, 2002 U.S. Dist. LEXIS 20289, at *12 (E.D. Pa. Oct. 9, 2002) ("The identification of a party as the perpetrator of a crime by a victim *or other witness* provides ample probable cause to charge that party" (emphasis added)), *aff'd* 76 F. App'x 442 (3d Cir. 2003). Further, any discrepancies as to the exact location of the stop[12] and between Smith's report and the victim's statement do not detract from the existence of probable cause. *See Adams v. Williams*, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."); *Knight v. Borough of Penns Grove*, 50 F. App'x 92, 94 (3d Cir. 2002) (finding that the presence of some factual discrepancies did not detract from the existence of probable cause because "the routine probable cause analysis

---

[10]  "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . follows the other person in or about a public place or places." 18 Pa. C.S. § 2709(a)(2).

[11]  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) ("Plaintiff has neither explicitly argued -- nor put forth Pennsylvania authority to support an argument -- that an officer who makes a warrantless arrest for a 'summary offense,' based on probable cause, may nonetheless be a person 'without privilege' to make such an arrest and that therefore the arrestee has a common law false arrest claim against that officer.").

[12]  Smith testified at the preliminary hearing that House was stopped across the street from the Family Dollar, which House contends is false because he was stopped across the street and approximately 100 yards away from the Family Dollar. *See* Compl. ¶ 19.

requires weighing the strongest inculpatory evidence offered by a positive victim identification against any available exculpatory evidence" (internal quotations omitted)).  As there was probable cause for is arrest, House fails to state a cause of action for false arrest / false imprisonment and default judgment is denied as to this claim.  This claim is dismised with prejudice.[13]

        **C.**       **The Complaint states a claim for malicious prosecution as to the charges of retail theft and receiving stolen property, only.**

Unlike a claim for false arrest, which only requires that there be probable cause for any charged offense, "a cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007).  As just discussed, there was probable cause to initiate criminal proceedings against House for harassment.

The Complaint shows that there was also probable cause for the disorderly conduct charge.  The disorderly conduct statute provides that a "person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . makes unreasonable noise [or] uses obscene language. . . ." 18 Pa. C.S. § 5503(a)(2), (3).  Here, House is alleged to have yelled profanities to the police officers while in a jail cell.  *See* Compl. ¶ 17a.  House does not suggest that he did not behave in such conduct.  Smith therefore cannot be liable for malicious prosecution of the disorderly conduct charge.[14]

---

[13]    Leave to amend would be futile.  *See Alston*, 363 F.3d at 235.
[14]    The malicious prosecution claims relating to the harassment and disorderly conduct charges are dismissed with prejudice because leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

However, there was no probable cause[15] to support either the retail theft or receiving stolen property charge.[16] Accepting the factual allegations of the Complaint as true, there was no video showing House stealing items from the Family Dollar and House asserts "did not steal anything." *See* Compl. ¶ 19.  Further, because such facts were misleading and material to the prosecutor's decision, House has stated a malicious prosecution claim against Smith as to the theft-related charges.

    **D.**    **Default judgment is conditionally granted, pending proof of damages, as to the Fourth Amendment and certain malicious prosecution claims.**

Because House has met the general requirements for default judgment as to his claims for an unreasonable search under the Fourth Amendment and for malicious prosecution as to the theft-related offenses, the Court must weigh the three *Chamberlain* factors in deciding whether to grant default judgment.

---

[15]    Although House has sufficiently pled that the items found in his backpack were illegally obtained, the manner in which this evidence was discovered does not impact the probable cause determination.  *See Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (holding that victims of unreasonable searches "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution"); *Konopka v. Borough of Wyo.*, 383 F. Supp. 2d 666, 675 (M.D. Pa. 2005) ("While the fruits of the allegedly illegal search may be inadmissible in criminal proceedings under the exclusionary rule, the illegality of said search does not vitiate the existence of probable cause in relation to the Court's analysis in the matter [malicious prosecution] presently before it.").

[16]    "A person is guilty of a retail theft if he: (1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof."  18 Pa. C.S. § 3929(a)(1).

A person is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. C.S. § 3925.

First, because Smith has completely failed to respond, House has no way to vindicate his rights and will therefore be prejudiced if default judgment is denied.[17] *See Einhorn v. Klayman Produce Co.*, No. 13-1720, 2013 U.S. Dist. LEXIS 176590, at *9 (E.D. Pa. Dec. 16, 2013) ("Defendant's lack of participation in this action continues to cause prejudice to Plaintiff."); *Ins. Co. v. Cobb*, No. 1:11-cv-1877, 2012 U.S. Dist. LEXIS 90366, at *5 (M.D. Pa. June 28, 2012) (same). The factor weighs in support of default judgment.

Second, because Smith failed to respond, this Court is unable to determine whether he has a litigable defense. However, at least as it relates to the Fourth Amendment claim, this Court can perceive of no possible defense. Accordingly, this factor also supports default judgment. *Cf. Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 52 (3d Cir. 2003) (concluding that because the district court was unable to evaluate whether the defendants had a litigable defense in the absence of an answer, the second *Chamberlain* factor was inconclusive), *with Duehr ex rel. Steelworkers Pension Tr. v. Marriott Hotel Mgmt. Co. Vi*, No. 10-4342, 2011 U.S. Dist. LEXIS 15020, at *3-4 (E.D. Pa. Feb. 10, 2011) (stating that because the defendant had not submitted any responsive pleadings, "this court can conclude only that it has no litigable defense") and *Wells Fargo Fin. Leasing, Inc. v. Target Ad, Inc.*, No. 09-340, 2010 U.S. Dist. LEXIS 28386, at *3

---

[17] On June 11, 2021, while the instant motion was pending, this Court was informed that House, whose address of record is the George W. Hill Correctional Facility, was released from custody. This Court independently conducted an inmate location search and was unable to find House in any Pennsylvania or federal prison. The Local Rules provide that any party appearing pro se, such as House, must "notify the Clerk within fourteen (14) days of any change of address." *See* E.D. Pa. Local Rule 5.1(b). House was specifically advised of this Rule when he filed the above-captioned action. *See* ECF No. 2. To date, House has not filed a change of address. It therefore appears that House has chosen not to pursue this litigation. If true, there is no prejudice by the denial of default judgment; rather, the case may be dismissed for failure to prosecute. According, this Court will reassess the prejudice factor at the hearing on damages. If House fails to appear for that hearing, the case will be dismissed for failure to prosecute. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

(E.D. Pa. Mar. 24, 2010) ("[A]s the defendant has not submitted any responsive pleadings, the court must assume it has no litigable defense").  The factor tends to weigh in support of default judgment.

Third, in the complete absence of any contact from Smith, the Court cannot find that he is anything more than negligent.  *See Hill*, 69 F. App'x at 52 (finding that the plaintiff "offered no reason to believe that the defendants acted willfully or in bad faith, and there was nothing in the record suggesting the defendants were more than negligent").  "Because the courts do not favor defaults, a party's culpable conduct cannot be inferred from the default but must appear independently from the default."  *E. Elec. Corp. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 551-52 (E.D. Pa. 2009) (internal quotations omitted).  Although service of the Complaint at Smith's place of business is proper service under the law, there is no evidence of culpability.[18] *See Liberty Bell Equip. Corp. v. Coastal Tool Supply, LLC*, No. 18-3019, 2018 U.S. Dist. LEXIS 191966, at *10 (E.D. Pa. Nov. 8, 2018) (determining that because there was no evidence of record regarding the defendant's culpability other than the default itself, the defendant was, at most, negligent).  This factor therefore weighs against default judgment.

Having weighed the *Chamberlain* factors, this Court finds that under the facts of this case, default judgment is warranted.  Unlike the case relied upon in *Chamberlain*, Smith has not appeared and moved to lift a default.  *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51-52 (3d Cir. 2003) (commenting that "*Chamberlain*, perhaps counterintuitively, applies this three-part test to the motion seeking a default judgment whereas the case on which *Chamberlain* relies - $ 55,518.05 in U.S. Currency - sets out the test in the context of a motion to overturn a default

---

[18]   This is especially true in light of the fact that House has been unable to determine whether Smith is in military service.  *See* 50 U.S.C. § 3931(b)(1).

judgment" but holding that it had no choice but to follow *Chamberlain*). Rather, he has failed to appear entirely so there is no possibility of a decision on the merits. The existence of prejudice is therefore substantial because the case can never move forward. Further, despite the fact that Smith has not submitted any defenses to evaluate, the facts do not suggest that he would have any litigable defense, at least as to the Fourth Amendment claim. Accordingly, although the third factor weighs against the issuance of default judgment, this Court finds that based on all the circumstances of this case default judgment is warranted. This decision is conditioned, however, upon the determination of damages at a hearing and the reassessment of the prejudice factor at that time.[19] *See Harris v. Bennett*, 746 F. App'x 91, 93-94 (3d Cir. 2018) (explaining that "a default is treated as an admission of the facts alleged, but the plaintiff may still be required to prove that she is entitled to the damages that she seeks."); *Hector*, 235 F.3d at 157 (concluding that "damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns").

### IV.   CONCLUSION

House has stated claims for an unreasonable search under the Fourth Amendment and for malicious prosecution as to the theft-related offenses. Considering the prejudice to House if default judgment is not granted, as well as the absence of any apparent litigable defense, the Court finds that the *Chamberlain* factors support the entry of default judgment. The entry of default judgment is conditioned, however, on the proof of damages at a damages hearing, at which time the Court will also reassess the prejudice factor. The motion for default judgment is therefore conditionally granted in part.

---

[19]   *See* Footnote 17, *supra*

A separate order will be issued.

                                    BY THE COURT:

                                    */s/ Joseph F. Leeson, Jr.*
                                    JOSEPH F. LEESON, JR.
                                    United States District Judge